THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| BRENNON LOFGRAN | ) | Case No. 2:14CV177 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION |
| CAROLYN COLVIN,<br>Acting Commissioner of the Social<br>Security Administration, | )<br><br>) | |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), to appeal the administrative decision of the Defendant, the Commissioner of the Social Security Administration, which denied Plaintiff's applications for Disability Insurance Benefits and Social Security income. The Court affirms the Administration Law Judge's decision for the following reasons.

### STANDARD OF REVIEW

The Court reviews the commissioner's decision to determine whether factual findings are supported by substantial evidence and whether the relevant legal standards were correctly applied.[1]  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  The Court may neither "reweigh the evidence [n]or substitute

---

[1] *Daniels v. Apfel,* 154 F.3d 1129, 1132 (10th Cir. 1998) *citing Castellano v. Secretary of Health and Human Services,* 26 F.3d 1027, 1028 (10th Cir. 1994).

[its] judgment for the [ALJ's]."[2]  Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[3]

## ISSUES

There are three primary questions on this appeal: 1) whether the ALJ conducted a proper step three analysis, 2) whether the ALJ improperly rejected the claimant's subjective complaints as well as the lay testimony of his mother, and 3) whether the ALJ met his step five burden to identify specific jobs, available in significant numbers, consistent with the claimant's specific functional limitations.

## ANALYSIS

The ALJ in this case applied the Social Security Administration's five step sequential evaluation to determine whether Plaintiff qualified for disability benefits.  At step one, the ALJ held that Mr. Lofgran had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found that Mr. Lofgran's seizure disorder secondary to traumatic brain injury with left ear deafness and loss of smell and taste, and cognitive disorder were "severe" impairments.  At step three, the ALJ found that none of Mr. Lofgren's impairments met or equaled any impairment in the Listing of Impairments.  The ALJ then found that Plaintiff retained the residual functional capacity (RFC) to perform medium work, except that he could never perform work at unprotected heights, around dangerous equipment, operate a motor vehicle, perform work that requires bilateral hearing, and was limited to unskilled work involving simple, routine, repetitive tasks.  At step four, the ALJ found that Mr. Lofgran could

---

[2] *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007)

[3] *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990)

not perform his past relevant work.  At step five, however, the ALJ found that Plaintiff could make a vocational adjustment to other jobs existing in significant numbers in the national economy.  Therefore, he determined that Plaintiff was not disabled under the Act.

**A. The ALJ conducted a proper step three assessment**

The plaintiff argues that the ALJ erred in determining that Mr. Lofgran's impairments did not meet or equal any listing.  The ALJ stated, "In terms of the claimant's seizures, although the claimant *does* suffer a loss of awareness consistent with the criteria of the listing, there is no evidence of transient postictal manifestations of unconventional behavior or significant interference with daily activities" (Tr. 15, emphasis added).  The only issue left for the court to address is whether the ALJ erred in finding no evidence of transient postictal manifestations.  Plaintiff noted that after having his small seizures, he has postictal periods where he is disoriented and needs to get his energy back.  He argues that the ALJ failed to explain how these postictal manifestations do not meet or equal the requirements of the listing.  To meet Listing 11.03, *Epilepsy–nonconvulsive epilepsy*, the condition must be:

> documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.  With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.[4]

To show an impairment matches a listing, it must meet *all* of the specified medical criteria.[5] Note that under 20 C.F.R. § 404.1529(a),  Plaintiff's own statements about his symptoms alone are not enough to establish that he is disabled ("statements about your pain or other symptoms will not

---

[4] 20 C.F.R. Pt. 404, subpt. P, Appx. 1 § 11.03.

[5] *Sullivan v. Zebley,* 493 U.S. 521, 530 (1900)(emphasis in the original)

alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged").  The *only* record evidence of alleged postictal manifestations was in November 2011, when Plaintiff reported having a one minute seizure to Kindra Jacoby, P.A.  Her report states that after the seizure, "He was more tired than usual the rest of the day" (Tr. 341).  The plaintiff has not met his burden of showing that this demonstrates "unconventional behavior or significant interference with the activity during the day." Plaintiff also relies on his own hearing testimony in which he stated that he experienced periods of disorientation and fatigue. The court finds that at the very least this evidence could support either the agency's decision or an award of benefits, so the agency's decision much be affirmed.[6]

**B. The ALJ Reasonably Evaluated the Credibility of Plaintiff's Subjective Complaints.**

In determining whether the ALJ reasonably evaluated Plaintiff's credibility, it is important to remember that "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidences."[7] But credibility determinations "must be grounded in the evidence and articulated in the determination or decision."[8]   The ALJ in this case considered the regulatory factors at 20 C.F.R. § 404.1529(c)(2)-(3) in reaching his conclusion that Plaintiff's statements regarding his

---

[6] *Ellison*, at 536.

[7] *Winfrey v. Chater,* 92 F.3d 1017, 1020 (10th Cir. 1996). Diaz v. Sec'y of Health and Human Services, 898 F.2d 774, 777 (10th Cir. 1990).

[8] SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996); *see also Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).

symptoms were not entirely credible. He also affirmatively linked his reasons to the record evidence. It would not be appropriate for this Court to upset the ALJ's credibility determination.

**C. The ALJ reasonably evaluated Plaintiff's Mother's Statements.**

The ALJ did not improperly reject the lay statements of Mr. Lofgran's Mother. The ALJ's report states that he "finds Mrs. Lofgran's observations of the claimant's impairments and functional limitations to be generally credible and affords her reports some weight to the extent they are consistent with the preponderance of the evidence " (Tr. 20). In determining the mother's credibility, the ALJ took into consideration the fact that she is not a disinterested third party, but might have a "natural tendency to agree with the symptoms and limitations the claimant alleges" (Tr. 20). The ALJ, after carefully considering all the medical evidence, stated that "Most importantly, significant weight cannot be given to her statements because it, like the claimant's, is simply not consistent with the preponderance of the medical evidence" (Tr. 20).

**D. The ALJ met his step five burden.**

At step five of the sequential evaluation, the burden shifts to the Secretary to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite the identified limitations. The testimony of a vocational expert may be taken, but it must come in response to an accurate hypothetical. "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision."[9] Plaintiff asserts that the vocational testimony on which the ALJ in this case relied was without evidentiary value because it was provided in

---

[9] *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991), *quoting Ekeland v. Bowen,* 899 F.2d 719, 724 (8th Cir. 1990).

response to an incomplete hypothetical that did not relate with precision all of Mr. Lofgran's limitations. According to Plaintiff, the ALJ's hypothetical failed to account for all the limitations set forth by the perceptual memory task interpretive analysis.

The record indicates, however, that the hypothetical question presented to the vocational expert included all of the limitations that the ALJ included in his residual functional capacity (RFC) assessment. Taking into consideration Mr. Lofgran's RFC, the vocational expert testified that the hypothetical individual could work in a number of light, unskilled jobs, all of which exist in significant numbers in the national economy. The ALJ's finding at step five is supported by substantial evidence.

## CONCLUSION

Because substantial evidence of record supports the Commissioner's decision that Mr. Lofgran did not meet the disability requirements of the Act, the Court hereby affirms the Commissioner's final decision denying Plaintiff's DIB and SSI applications.

DATED this 8th day of January, 2015.

BY THE COURT:

_David Sam_

DAVID SAM
SENIOR JUDGE
U.S. DISTRICT COURT